UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIEH, INC.,

                    Plaintiff,

-v-

TEKNO PRODUCTS, INC. and MAX DELUXE LIMITED,

                    Defendants.

19-CV-178 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff MIEH, Inc. ("MIEH") filed this action on January 7, 2019, alleging as relevant that a toy car manufactured by Defendant Max Deluxe Limited ("Max Deluxe") and distributed by Defendant Tekno Products, Inc. ("Tekno") infringes the rights held by MIEH as exclusive U.S. licensee of U.S. Patent No. 9,731,212 (the "'212 Patent"). (Dkt. No. 1 ("Compl.") ¶¶ 11, 18, 26–29.) Defendants have now moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), on the ground that MIEH has failed to join the assignee of the '212 Patent, Ever Victory Technology Limited ("Ever Victory"), in this litigation. (Dkt. No. 32.) For the reasons that follow, Defendants' Rule 12(c) motion is denied without prejudice.

**I.    Background**

    The '212 Patent at issue in this action was filed on December 1, 2015, and issued on August 15, 2017, with Kwong Ming Cheung listed as the inventor and Ever Victory listed as the assignee. (*See* Dkt. No. 1-1.) Among other things, the patent describes a design for a motorized toy car capable of moving along a toy track system. (Dkt. No. 1-1 col. 10:4–29.)

    MIEH, a Delaware corporation that designs consumer products, claims that it obtained all substantial rights in the '212 Patent by way of an October 2016 exclusive licensing agreement between its predecessor in interest and Everite Transworld Limited ("Everite"), a company

1

affiliated with Ever Victory. (Compl. ¶¶ 5, 10–11; Dkt. No. 36 ¶¶ 28–31.) And MIEH further maintains that, soon after acquiring these rights, its predecessor began to promote a toy car, known as ZIPES, that fell within the patent's specifications. (Compl. ¶¶ 14, 20.) But once ZIPES hit the market, MIEH claims, it proved so popular that other companies began to want in on the action: upon witnessing the "high demand" for ZIPES, Hong Kong corporation Max Deluxe began to manufacture a competing product, Turbo Pipes Race, which it distributed through a New Jersey corporation, Tekno. (Compl. ¶ 18; *see also id.* ¶¶ 6–7.) MIEH contends that this competing product willfully infringes several claims of the '212 Patent. (Compl. ¶¶ 19, 21.)

On January 7, 2019, MIEH sought to vindicate its alleged rights under the '212 Patent by filing this lawsuit against Max Deluxe and Tekno.[1] (Dkt. No. 1.) MIEH's complaint asserts two claims against Defendants. First, it claims that Defendants have committed patent infringement in violation of 35 U.S.C. § 271 by manufacturing and distributing the Turbo Pipes Race product. (Compl. ¶¶ 26–29.) Second, it claims that Defendants have committed copyright infringement in violation of 17 U.S.C. § 501 by reproducing material from a ZIPES user's manual in which MIEH holds a copyright. (Compl. ¶¶ 24, 30–36; *see also* Dkt. Nos. 1-2, 1-4.) As redress, MIEH seeks, among other things, damages, injunctive relief, and attorney's fees. (Compl. at 8–9.)

Defendants answered the complaint on February 28, 2019. (Dkt. Nos. 21–22.) Soon thereafter, on March 26, 2019, Defendants moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that MIEH has failed to join an indispensable party—*i.e.*,

---

[1] MIEH initially named Wisconsin corporation Menard, Inc. as a defendant as well (Compl. ¶ 8), but MIEH has since voluntarily dismissed its claims against Menard (Dkt. No. 29).

the assignee of the '212 Patent, Ever Victory—in this litigation. (Dkt. No. 32.) Defendants' motion is now fully briefed (Dkt. Nos. 33, 35, 37), and the Court is prepared to rule.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  In assessing a Rule 12(c) motion, "[a]ll factual allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party." *Horton v. Westling*, 765 F. App'x 531, 532 (2d Cir. 2019) (summary order).

Here, the basis for Defendants' Rule 12(c) motion is MIEH's supposed failure to join an indispensable party under Federal Rule of Civil Procedure 19.  (Dkt. No. 32.)  To decide whether Rule 19 warrants dismissal, a court applies "a two-step test." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).  First, "the court must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a)," *id.*, which, as relevant, provides that any person "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party" to a litigation if:

    (A)    in that person's absence, the court cannot accord complete relief among existing parties; or

    (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

        (i)    as a practical matter impair or impede the person's ability to protect the interest; or

        (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Second, if a party is necessary under Rule 19(a) and if joinder of that party is "not feasible for jurisdictional or other reasons," the court proceeds to step two and asks

"whether the party is 'indispensable'" under Rule 19(b), *Viacom*, 212 F.3d at 725, which directs the court to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," Fed. R. Civ. P. 19(b).

In conducting a Rule 19 analysis, a court "should take a 'flexible approach,'" *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002) (quoting *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987)), exercising "substantial discretion . . . in determining how heavily to emphasize certain considerations in deciding whether the action should go forward," *Errico v. Stryker Corp.*, 281 F.R.D. 182, 187 (S.D.N.Y. 2012). Given the need to conduct a "fact-based analysis of the effects of non joinder, . . . matters outside the pleadings may be considered" in connection with Rule 19. *Rahman v. Shiv Darshan, Inc.*, No. 12 Civ. 3457, 2013 WL 654189, at *5 (E.D.N.Y. Feb. 22, 2013).

**III. Discussion**

The U.S. Patent Act allows "[a] patentee" to bring a "civil action for infringement of his patent." 35 U.S.C. § 281. Under the statute, "[t]he term patentee includes the original patentee (whether the inventor or original assignee) and 'successors in title,'" but "does not include mere licensees." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) (quoting 35 U.S.C. § 100(d)).[2] Thus, even if a licensee holds *contractual* rights "to make, use, or sell [a] patented invention" and "to prevent others from practicing the invention"—known as "exclusionary rights"—those rights must "be enforced through or in the name of the owner of the patent." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) (last quoting *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 467 (1926)). To comply

---

[2] Because this case "aris[es] under the patent laws," this Court applies Federal Circuit precedent. *Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, 138 F. Supp. 3d 303, 314 (S.D.N.Y. 2014) (quoting *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 475 (Fed. Cir. 1991)).

4

with Rule 19, then, "where an exclusive licensee brings suit to enforce a patent right, the patent holder must generally be joined in the suit as a necessary party." *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, No. 15 Civ. 3997, 2015 WL 6685523, at *5 (S.D.N.Y. Oct. 29, 2015).

Invoking these principles, Defendants argue that this action should be dismissed because MIEH, a purported licensee of the '212 Patent, has failed to join Ever Victory, the assignee, as a party. (Dkt. No. 33 at 4.) As Defendants note, MIEH "does not allege that it has any ownership interest in the '212 [P]atent" (Dkt. No. 33 at 1), and indeed, to the extent that MIEH has alleged that ownership of the '212 Patent has been assigned to any entity other than Ever Victory, it has identified Everite as the assignee (Compl. ¶ 13). So, Defendants argue, if MIEH litigates this infringement action without joining the assignee (be it Ever Victory or Everite), the assignee's right "to freely license [Defendants] to exploit the patent without the consent of [MIEH]" could be compromised. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998). Therefore, Defendants conclude, the assignee has a vital stake in this case and so must be joined.

But there is an exception to the general rule that a licensee cannot bring an infringement action without joining the patent owner. Specifically, "[t]he Federal Circuit has consistently held that when an exclusive licensee acquires '*all* substantial rights' in a patent, the licensee qualifies as a 'virtual assignee' and, consequently, may file an infringement suit on its own behalf." *Applied Interact, LLC v. Vt. Teddy Bear Co.*, No. 04 Civ. 8713, 2005 WL 1785115, at *2 (S.D.N.Y. July 28, 2005) (emphasis added) (quoting *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998)). Relying on this exception, MIEH points out that the licensing agreement between its predecessor in interest and Everite granted its predecessor the exclusive right to exploit within the United States "*all* . . . Intellectual Property Rights" associated with the toy design at issue here. (Dkt. No. 36-3 at 6 (emphasis added); *see also* Dkt. No. 35 at 3–4.)

5

Given the broad scope of this license, MIEH claims that it holds all substantial domestic rights in the '212 Patent, such that it need not join the patent's assignee in a domestic infringement action.

Ultimately, then, whether MIEH may proceed on its infringement claim without joining the '212 Patent's assignee hinges on the scope of the rights that were conferred on MIEH by its predecessor's licensing agreement with Everite. And Defendants, for their part, never squarely dispute MIEH's contention that it holds all substantial rights in the '212 Patent pursuant to the licensing agreement.[3] Instead, referring to an action that Everite and Ever Victory have filed against MIEH in federal court in Illinois (the "Illinois Action"), *Everite Transworld Ltd. v. MIEH, Inc.*, No. 19 Civ. 678 (N.D. Ill.), Defendants observe only that "there is currently an ongoing dispute between [MIEH] and Ever Victory . . . in which *Ever Victory* is contesting [MIEH's] rights to the '212 [P]atent" (Dkt. No. 37 at 4 (emphasis added)). While apparently agnostic as to what the outcome of the Illinois Action ought to be, Defendants take the position that its very existence indicates a dispute over the scope of MIEH's rights as licensee and thus forecloses MIEH from bringing a unilateral infringement action. (Dkt. No. 39 at 18:3–20:3.)

The Court is not persuaded by Defendants' argument. Under the relevant case law, "[i]t is well established that the *holder* of all substantial patent rights, by assignment or by exclusive license, has standing to sue for infringement in its own name." *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1343 (Fed. Cir. 2000) (emphasis added). Defendants have cited no authority establishing that an entity that does, as a matter of law, hold all substantial rights in a patent loses the associated right to sue unilaterally merely because that right is

---

[3] Defendants do contend that this Court may not consider the documents, including the licensing agreement, that MIEH has filed in opposition to the Rule 12(c) motion because those documents were not incorporated into MIEH's complaint. (Dkt. No. 37 at 2–3.) As the Court has already observed, though, "matters outside the pleadings may be considered" when deciding whether to dismiss for failure to join an indispensable party. *Rahman*, 2013 WL 654189, at *5.

contested. Nor would such a rule make sense. Otherwise, a patent owner could license away all substantial rights in a patent and yet effectively continue to exercise its veto right over the licensee's infringement actions merely by disputing the scope of the license. Defendants have presented the Court with no persuasive reason to embrace this counterintuitive result.

The Court therefore concludes that *if* MIEH holds all substantial rights in the '212 Patent under its predecessor's licensing agreement with Everite, then Ever Victory is not a necessary party under Rule 19. But *if*, on the other hand, the licensing agreement does *not* confer on MIEH all substantial rights in the '212 Patent, then MIEH must join the patent owner as a party to this action. Ordinarily, the Court's next step would be to decide the scope of MIEH's patent rights under the licensing agreement and rule accordingly. Here, though, the scope of MIEH's rights will be decided in the Illinois Action, and the parties have agreed that if the Court concludes—as it now has—that Defendants are not entitled to judgment on the pleadings outright, this litigation should be stayed pending the outcome of the Illinois Action. (Dkt. No. 39 at 13:15–14:13.)

In keeping with the "flexible approach" the Second Circuit has directed district courts to take in resolving Rule 19 issues, *Universal Reinsurance Co.*, 312 F.3d at 87 (quoting *Jaser*, 815 F.2d at 242), this Court concludes that the proper course here is to deny Defendants' Rule 12(c) motion without prejudice to renewal after the outcome of the Illinois Action clarifies the scope of MIEH's rights in the '212 Patent. And this Court further concludes that, pursuant to the parties' agreement, this case shall be stayed during the pendency of the Illinois Action.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings is DENIED without prejudice to renewal following judgment in the Illinois Action. The parties are directed to file a status update on or before November 1, 2019, and every ninety days thereafter, notifying the Court of the status of the Illinois Action.

The Clerk of Court is directed to close the motion at Docket Number 32 and to stay this case pending further order of the Court.

SO ORDERED.

Dated: September 11, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge